UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. MARCUS TERRELL SMITH, Petitioner, v. RANDY PFISTER, Warden, Pontiac Correctional Center, Respondent. | No. 09 C 01346<br><br>Hon. Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

After a jury trial, Petitioner Marcus Terrell Smith ("Smith" or "Petitioner") was convicted of the first degree murder of James Vanston, as well as armed robbery, aggravated kidnaping, and residential burglary. Smith is serving a 100-year prison term in the custody of Randy Pfister,[1] warden of Pontiac Correctional Center in Pontiac, Illinois. Smith has filed a *pro se* petition for a writ of habeas corpus [42], pursuant to 28 U.S.C. § 2254, arguing that he was denied effective assistance of counsel on direct appeal. For the reasons explained herein, the petition is denied.

**FACTUAL BACKGROUND**

On habeas review, the court presumes the facts as found by the state court correct, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). The following facts are derived from the Illinois Appellate Court's order affirming Smith's conviction on direct appeal and the trial court's postconviction order. (*See* Rule 23 Order, *People v. Smith*, No. 1-06-2084 (1st Dist. Ill. App. Ct. Aug. 1, 2008) (hereinafter "Direct Appeal Order"), Ex. B to Resp't's Answer; Post-Conviction Order, No. 02 CR 13497 (Ill. Cir. Ct. Jan. 23, 2009) (hereinafter "Post-Conviction Order"), Ex. K to Resp't's Answer [50].) Where those orders are silent, the court relies on the briefs

---

[1] After filing his petition, Smith was transferred to Pontiac Correctional Center. Randy Pfister is the acting warden of Pontiac Correctional Center, and is substituted here as the proper respondent. *See* FED. R. CIV. P. 25(d)(1); Habeas Rule 2(a); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005).

filed on direct appeal by Smith and by Respondent. (Pet'r's Br. on Direct Appeal, *People v. Smith*, No. 02 CR 13497 (hereinafter "Pet'r's Br. on Direct Appeal"), Ex. C to Resp't's Answer; State's Br. on Direct Appeal, *People v. Smith*, No. 02 CR 13497, (hereinafter "State's Br. on Direct Appeal"), Ex. D to Resp't's Answer.)

## I. Smith's Arrest

The investigation that let to Petitioner's conviction began on March 30, 2001, when a friend of James Vanston reported that Vanston had been missing for two days. (Direct Appeal Order at 2.) Vanston's friend told police that on March 28, 2001, Vanston had a date with a man named "Greg," later identified as Gregory Crowder. (*Id.*) The police were unable to locate Crowder, but a search of Crowder's arrest records led to Petitioner, whose name came up as someone who had previously been arrested with Crowder. (Post-Conviction Order at 2.)

The police found Smith at his home at approximately 1:00 p.m. on April 30, 2001. (Direct Appeal Order at 3; Post-Conviction Order at 2.) Whether Smith went to the police station voluntarily is the subject of dispute. At a suppression hearing, Smith and his sister testified that the police took Smith from his home to the police station in handcuffs. (Pet'r's Br. on Direct Appeal at 11-12; State's Br. on Direct Appeal at 18.) This was an arrest, according to Smith, who claims he was advised of his rights when he was seized at his home and again when he arrived at the police station. (Pet'r's Br. on Direct Appeal at 14; State's Br. on Direct Appeal at 18-19.) Smith contends he was handcuffed to a wall at the police station until about 2:00 p.m. the following day. (Pet'r's Br. on Direct Appeal at 14.) Smith also claims that he made several requests for an attorney, but his requests were ignored. (*Id.*) According to the officers, Smith went to the police station voluntarily. (State's Br. on Direct Appeal at 18-19.)

Both sides agree that Smith was questioned by various detectives until 6:30 p.m. on May 1, when he took a polygraph examination. (Pet'r's Br. on Direct Appeal at 9; State's Br. on Direct Appeal at 13-15.) Before the polygraph was administered, Smith had told the detectives that

2

Crowder was dating Vanston and that Crowder had beaten Vanston. (Pet'r's Br. on Direct Appeal at 9.) That evening, the police finally located Crowder and interviewed him at about 7:45 p.m. (Pet'r's Br. on Direct Appeal at 10.) Crowder told the detectives that it was Smith who was dating Vanston, and that he (Crowder) had heard that Smith and two other men had killed Vanston. (*Id.*)

At 9:00 p.m., officers advised Smith that the polygraph examination indicated that he was being deceptive. (Pet'r's Br. on Direct Appeal at 10; State's Br. on Direct Appeal at 16.) At this point, Smith told police that Crowder and two other men told him that they had abducted Vanston, beaten Vanston in a garage near Smith's home, and dumped his body in a nearby catch basin. (Pet'r's Br. on Direct Appeal at 10-11; State's Br. on Direct Appeal at 16.) According to the police, Smith was not under arrest and had been free to leave the police station until this moment. (State's Br. on Direct Appeal at 16-17.)

Both sides agree that Smith consented to the search of his house and the catch basin. (Pet'r's Br. on Direct Appeal at 10; State's Br. on Direct Appeal at 16.) The police discovered Vanston's body in the catch basin at approximately 9:45 p.m. on May 1, 2001. (Pet'r's Br. on Direct Appeal at 11; State's Br. on Direct Appeal at 16.) Smith was subsequently questioned by police from 10:30 p.m. until 3:30 p.m. the following day, May 2, 2001. (Pet'r's Br. on Direct Appeal at 11; State's Br. on Direct Appeal at 16-17.) During this round of questioning, Smith admitted to his involvement in the murder, and at 8:00 p.m. on May 2, 2001, Smith gave a videotaped confession that would be used against him at trial. (Pet'r's Br. on Direct Appeal at 11-12; State's Br. on Direct Appeal at 17.)

II.     **Smith's Confession**

In his confession, Smith stated that Crowder offered him $5,000.00 to help steal $250,000.00 from Vanston. (Pet'r's Br. on Direct Appeal at 12.) Crowder explained that he needed Vanston's bank account information, including his PIN number, to access money in Vanston's account. (Pet'r's Br. on Direct Appeal at 12; State's Br. on Direct Appeal at 6-7.) Crowder, Smith,

and another individual, Chris Carter, planned to threaten Vanston with a fake gun in order to get Vanston to divulge the PIN number. (Pet'r's Br. on Direct Appeal at 12; State's Br. on Direct Appeal at 6-7.)

Smith related, further, that on the evening of March 28, 2001, Crowder lured Vanston to Smith's backyard, where Smith, Crowder, and Carter ambushed Vanston, restrained him, and demanded his PIN number. (Pet'r's Br. on Direct Appeal at 12; State's Br. on Direct Appeal at 7.) When Vanston told his assailants that he did not have a PIN number, the three men brought Vanston to a garage near Smith's house where they beat and tortured Vanston. (Pet'r's Br. on Direct Appeal at 12-13; State's Br. on Direct Appeal at 7-8.) Smith, Crowder, and Carter then put Vanston in the trunk of his own car and drove around the city looking for a place to dump Vanston's body. (Pet'r's Br. on Direct Appeal at 13.) They ultimately drove back to Smith's residence and dumped Vanston in a nearby catch basin. (Pet'r's Br. on Direct Appeal at 13; State's Br. on Direct Appeal at 9.) Smith, Crowder, and Carter then drove to Vanston's house where they stole various items. (Pet'r's Br. on Direct Appeal at 13.)

The next morning, Smith stated, he moved Vanston's car to 13th Street and Komisky Avenue. (Pet'r's Br. on Direct Appeal at 13.) Later that day, Smith, Crowder, and Carter tried unsuccessfully to use Vanston's credit card at an ATM machine using a PIN number Crowder had found in Vanston's wallet. (Pet'r's Br. on Direct Appeal at 13.) Two days later, fearing that he might have left fingerprints in Vanston's apartment, Crowder contacted Smith, insisting that they had to go back to the apartment and burn it down. (Pet'r's Br. on Direct Appeal at 14.) Smith stated that he and Crowder did go to Vanston's apartment, but left when they saw police cars. (Pet'r's Br. on Direct Appeal at 14.) According to Smith, Crowder then moved Vanston's car to the area of Cermak and Pulaski Avenues, where they removed the license plates, placed some garbage inside the vehicle, and set it on fire. (Pet'r's Br. on Direct Appeal at 14.)

Prior to trial, Smith moved to quash his arrest and suppress his confession. (*See* Mot. to

4

Quash Arrest and Suppress Evidence, Ex. 1 to Pet'r's Mot. To Enter Exs. [54].) The motion was denied.[2] (Direct Appeal Order at 6-7.) The trial court concluded that Smith was not under arrest until 9:30 p.m. on May 1, 2001, at which point the police had probable cause. (Pet'r's Br. on Direct Appeal at 15; State's Br. on Direct Appeal at 19-20.)

### III. Trial

At his 2006 trial in the Circuit Court of Cook County, the jury saw Smith's videotaped confession. (*See* Judgment, *People v. Smith*, No. 02 CR 13497 (Ill. Cir. Ct. July 5, 2006), Ex. A to Resp't's Answer.) The jury also heard testimony that Smith's fingerprints were found on a newspaper recovered from Vanston's car. (*Id.*) Smith took the stand, and insisted that he had nothing to do with the murder. (*Id.* at 16.) Smith testified that in late March 2001, he called Crowder in order to borrow a car. (*Id.*) Smith claimed that Crowder lent him Vanston's car, and that Smith was unaware that the vehicle was stolen or that Vanston had been murdered. (*Id.*) Smith stated that about five days later, when Crowder told him what had happened to Vanston, Smith moved Vanston's car to Pulaski and Cermak, wiped his fingerprints from the car, and briefly set the inside of the car ablaze, but extinguished the fire a few minutes later. (*Id.*) Smith testified that he later checked the catch basin near his home. where he saw the bottom of a black shoe, but did not look any further. (*Id.*) Smith explained that he did not contact the police because he was afraid of Crowder and he did not want to get involved. (*Id.*) On the witness stand, Smith repudiated his confession, explaining that he implicated himself because the police falsely assured him he would be used as a witness against Crowder, and would not be charged with the murder. (*Id.*) Smith was convicted of first degree murder, armed robbery, aggravated kidnaping, and residential burglary. (*See* Judgment, *People v. Smith*, No. 02 CR 13497 (Ill. Cir. Ct. July 5, 2006).) The trial court sentenced Smith to 100 years in prison. (*Id.*)

---

[2]   The record before this court does not include a copy of the transcript of the suppression hearing or of the trial court's order on Smith's motion to quash.

**PROCEDURAL HISTORY**

On direct appeal, Smith contended that the trial court erred in denying the motion to quash his arrest and suppress his confession. (*See* Pet'r's Br. on Direct Appeal, People v. Smith, No. 02 CR 13497 at 15.) Smith argued that his confession was obtained as the result of an illegal detention. (*See* Direct Appeal Order at 1.) The First District Appellate Court affirmed the conviction, and Smith filed an unsuccessful petition for rehearing. (*See* Direct Appeal Order; Pet. for Reh'g, *People v. Smith*, No. 1-06-2084, Ex. F to Resp't's Answer.) In his subsequent petition for leave to appeal to the Illinois Supreme Court ("PLA"), Smith again argued that he had been detained illegally. (*See* Pet. for Leave to Appeal, *People v. Smith*, No. 107302, Ex. G to Resp't's Answer, at 3, 13-14.) In November 2008, the Supreme Court of Illinois denied Smith's PLA. (Order Den. PLA, *People v. Smith*, No. 107302 (Ill. Nov. 26, 2008), Ex. H to Resp't's Answer.) In June 2009, the United States Supreme Court denied *certiorari*. (*See* Docket, *Smith v. Illinois*, No. 08-10233, Ex. I to Resp't's Answer.)

Smith began postconviction proceedings on October 30, 2008 by filing his first *pro se* petition for postconviction relief, pursuant to 725 ILCS 5/122-1, *et seq.*, in the state trial court. Smith's 42-page filing is difficult to decipher, but as the court interprets the petition, it raises thirty-six numbered issues which Smith claims his counsel failed to raise on direct appeal.[3] (Post-Conviction Pet., *People v. Smith*, No. 02 CR 13497, Ex. J to Resp't's Answer, at C18-19.) Relevant to the present petition are Claims 1-3, 15, and 16, which assert violations of the Fifth Amendment and *Miranda* (*id.* at C20-50); Claims 4, 9, 10, 17, 24, and 25; which assert that Smith was detained, questioned, and arrested without probable cause (*id.* at C23-53); and Claims 5 and 6, asserting that Crowder should have been called to testify and cross-examined at the suppression hearing. (*Id.* at C24-34.) The trial court dismissed the postconviction petition in January 2009. (*See* Post-

---

[3] When determining whether a claim has been fairly presented, the court construes *pro se* petitions liberally. *See Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2009) (citation omitted).

Conviction Order.) In its ruling, the trial court considered Smith's claim that his appellate counsel provided ineffective assistance by failing to argue that Smith's confession was obtained in violation of *Miranda*. That claim, the court ruled, was barred by the doctrine of *res judicata*, because appellate counsel did in fact raise the issue on direct appeal, and the appellate court rejected it. (*Id.* at C88-89.) The trial court also addressed Smith's Sixth Amendment arguments regarding his right to confront witnesses at trial. The court concluded that these arguments were waived because they had not been raised at trial or on direct appeal. (*Id.* at C82.) The trial court did not address Smith's contention that Crowder should have testified and been cross examined at the suppression hearing, nor the other ineffective assistance arguments directed toward appellate counsel. (*See* Post-Conviction Order.)

Smith appealed the trial court's ruling on his postconviction petition with the assistance of appointed counsel. Smith's attorney filed a brief arguing a single issue: that the trial court erred in dismissing Smith's postconviction petition because the petition raised a meritorious claim of actual innocence. (*See* Pet'r's Br., *People v. Smith*, No. 1-09-0595, Ex. L to Resp't's Answer; Resp't's Br., *People v. Smith*, No. 1-09-0595, Ex. M to Resp't's Answer; Reply Br., *People v. Smith*, No. 1-09-0595, Ex. N to Resp't's Answer.) After counsel filed the opening brief, Smith filed a *pro se* motion requesting that the court discharge his attorney and appoint new counsel, and/or consider the additional claims contained in his *pro se* postconviction petition. (*See* Mot. to Discharge Counsel, *People v. Smith*, No. 02-CR-13497, Ex. O to Resp't's Answer, at 1-28.) Smith asserted that the claims raised in his postconviction petition had merit, but appointed counsel had refused to raise these claims on appeal. (*Id.* at 5.) Smith's motion reiterated his *Miranda* and Sixth Amendment arguments, as well as ineffective assistance claims, and he asked the court to consider these claims along with the brief filed by counsel. (*Id.* at 9-28.) The motion to discharge counsel and raise additional claims was summarily denied on June 14, 2010. (*See* Order Den. Mot. to Discharge Counsel, *People v. Smith*, No. 1-09-0595, Ex. O to Resp't's Answer, at 29.)

On July 2, 2010, in a second attempt to bring the claims raised in his original postconviction petition to the appellate court's attention, Smith brought a motion for leave to file a supplemental brief. (*See* Mot. for Leave to File Supplemental Br., *People v. Smith*, No. 02-CR-13497, Ex. O to Resp't's Answer, at 30-34.) In this motion, Smith again asserted that appointed counsel had failed to raise the claims contained in his original postconviction petition, and had failed to supplement the brief in order to preserve those claims. (*Id.* at 32.) The State objected, arguing that counsel had filed a brief on Smith's behalf, and he was not permitted to simultaneously proceed *pro se*. (*See* People's Resp. to Pet'r's Mot., *People v. Smith*, No. 02-CR-13497, Ex. O to Resp't's Answer, at 35-41.) On July 7, 2010, the Illinois Appellate Court summarily denied Smith's second motion, and on February 3, 2011, the appellate court affirmed the dismissal of Smith's postconviction petition. (*See* Order Den. Mot. for Leave to File Supplemental Br., *People v. Smith*, No. 1-09-0595, Ex. O to Resp't's Answer, at 42; Rule 23 Order, *People v. Smith*, No. 1-06-2084 (Ill. App. Ct. Feb. 3, 2011) (hereinafter "Postconviction Appeal Order"), Ex. P to Resp't's Answer.) The appellate court's ruling did not address any of the issues that Smith attempted to raise in his motion to discharge, or in his motion to file a supplemental brief. (*See* Postconviction Appeal Order.)

On April 21, 2010, before Smith's first postconviction appeal concluded, Smith sought leave to file another postconviction petition in the trial court. (*See* Successive Postconviction Pet., *People v. Smith*, No. 02 CR 13497, Ex. S to Resp't's Answer.) The successive petition contained many of the same claims raised in the original postconviction petition. (*Id.* at C34-60.) On June 15, 2010, the trial court denied Smith leave to file the successive petition. (*See* Successive Post-Conviction Order, *People v. Smith*, No. 02 CR 13497 (Ill. Cir. Ct. June 15, 2010), Ex. T to Resp't's Answer.) Smith appealed this order on July 1, 2010. The Office of the State Appellate Defender was appointed to represent Smith, but moved to withdraw on the ground that the appeal raised no meritorious issues. (*See* Mot. to Withdraw, *People v. Smith*, No. 1-10-2087, Ex. U to Resp't's Answer; see also Objection to Mot. to Withdraw, *People v. Smith*, No. 1-10-2087, Ex. V to Resp't's

Answer.) The Illinois Appellate Court granted the motion to withdraw and affirmed the trial court's denial of leave to file the successive petition. (*See* Summary Order (Ill. App. Ct. Sept. 9, 2011), *People v. Smith*, No. 1-10-2087, Ex. W to Resp't's Answer.) Respondent asserts, and Smith does not dispute, that Smith has not filed a PLA with the Supreme Court of Illinois seeking review of the adverse judgment on his successive postconviction petition. (Resp't's Answer [50], at 10.)

On September 23, 2011, after the Appellate Court affirmed the dismissal of Smith's first postconviction petition, Smith filed a postconviction PLA with the Illinois Supreme Court. (*See* Pet. for Leave to Appeal (hereinafter "PLA") and Mot. for Leave to file PLA, *People v. Smith*, No. 113070, Ex. Q to Resp't's Answer.) In the postconviction PLA, Smith claimed:

(1) appellate counsel appointed to represent petitioner on postconviction appeal failed to raise the claims contained in the postconviction petition;

(2) Smith was illegally detained and interrogated in violation of *Miranda*;

(3) counsel on direct appeal was ineffective for failing to argue that Smith's trial counsel was ineffective for failing to call Crowder at petitioner's suppression hearing; and

(4) trial counsel was ineffective for failing to call Crowder as a witness at trial.

(*See* PLA at 3-4.) The Illinois Supreme Court denied Smith's postconviction PLA on November 30, 2011. (See PLA Dispositions, Ill. Supreme Ct. (Ill. Nov. 30, 2011), Ex. R to Resp't's Answer, at 2.)

On March 3, 2009, Smith filed his *pro se* petition for a writ of habeas corpus with this court pursuant to 28 U.S.C. § 2254. (Pet. for Writ of Habeas Corpus (hereinafter "Habeas Pet.") [1].) Smith's appeal of the dismissal of his first postconviction petition was pending at the time this habeas petition was filed, so on July 16, 2009, the court stayed further proceedings pending completion of the state court proceedings. (July 16, 2009 Minute Order [27].) On December 29, 2011, after the Illinois Supreme Court denied Smith's PLA, Smith filed an amended habeas petition with this court. (*See* Am. Pet. for Writ of Habeas Corpus [42] (hereinafter "Am. Habeas Pet.").) On January 10, 2012, the stay was lifted and Smith confirmed that the claims contained in his amended

9

habeas petition are the only claims on which he relies in challenging his conviction. (Jan. 10, 2011 Minute Order [39].) Smith's amended habeas petition raises two ineffective assistance claims directed at his counsel on direct appeal:

(1) counsel on direct appeal failed to raise the claim that the trial court had erred in denying and/or failing to reconsider its ruling on the motion to quash Smith's arrest and suppress his confession; and

(2) counsel on direct appeal failed to argue that Smith was arrested without probable cause because the detectives improperly relied on Crowder's statements.

(*See* Am. Habeas Pet. at 5-6.)

## **DISCUSSION**

As noted, Smith's amended habeas petition asserts two ineffective assistance of counsel claims, both aimed at the performance of his counsel on direct appeal. He contends counsel should have (a) challenged the trial court's ruling on the motion to quash his arrest and suppress his confession; and (b) challenged probable cause for Smith's arrest to the extent that it rested on Crowder's statements. (Am. Habeas Pet. at 5-6.) In response, Respondent argues that both of these claims are procedurally defaulted, and, in the alternative, that Smith's ineffective assistance claims are meritless. (Resp't's Answer at 14, 20.) The procedural default argument rests on Smith's failure to raise these claims in his postconviction appeal or in his postconviction PLA. (Resp't's Answer at 16-19.) As the court reads the record, the ineffective assistance claims raised in Smith's amended habeas petition were presented to the Illinois Appellate Court in Smith's first postconviction petition. Because Smith failed to present these claims to the Illinois Supreme Court in his postconviction PLA, however, those claims were not subject to a full round of review, and are now procedurally defaulted.

**Procedural Default**

Before seeking habeas review, a petitioner must exhaust the available state remedies. 28 U.S.C. § 2254(b). Procedural default "refer[s] to the two separate, but closely related

10

circumstances where a federal court is barred from considering the merits of a petitioner's habeas claim: '(1) when that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state law grounds; or (2) when the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred.'" *See Kizer v. Uchtman*, 165 F. App'x 465, 467 (7th Cir. 2006) (quoting *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (citations omitted)); see also *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004) (citations omitted).

### A. Fair Presentment

Courts interpret § 2254(b) as requiring a petitioner to "'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Johnson v. Pollard*, 559 F.3d 746, 751 (7th Cir. 2009) (alteration in original) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). To fairly present a federal claim, the petitioner must put the claim through one complete round of the State's established appellate review process. *Id.* at 752 (citing *Woodford v. Ngo*, 548 U.S. 81, 92 (2006)). "Failure to do so precludes review by federal courts." *Id.* *Pro se* petitions, such as Smith's, are liberally construed when determining whether a claim has been fairly presented. *See Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010) (citation omitted).

The operative facts and controlling federal legal principles governing the ineffective assistance claims raised in Smith's habeas petition were presented in his first postconviction petition. (Post-Conviction Pet. at C18-19, 20-22, 24-34.) Smith has reformulated these claims since filing his first postconviction petition, but the substance remains the same. *See Ward v. Jenkins*, 613 F.3d at 697 ("Hypertechnical congruence between the claims made in the federal and state fora is not required . . . ."). Smith's postconviction petition was denied, and he appealed with the assistance of appointed counsel. Postconviction appellate counsel filed a brief which did not include the ineffective assistance claims. Instead, Smith's postconviction attorney presented a

single issue: that the trial court erred in dismissing Smith's petition because Smith raised a meritorious claim of actual innocence. (Pet'r's Br., *People v. Smith*, No. 1-09-0595, Ex. L to Resp't's Answer; Resp't's Br., *People v. Smith*, No. 1-09-0595, Ex. M to Resp't's Answer; Reply Br., *People v. Smith*, No. 1-09-0595, Ex. N to Resp't's Answer.) Smith's counsel did not raise any of the other claims Smith had included in his original *pro se* postconviction petition. (*See* Post-Conviction Pet.; Pet'r's Br., *People v. Smith*, No. 1-09-0595, Ex. L to Resp't's Answer; Resp't's Br., *People v. Smith*, No. 1-09-0595, Ex. M to Resp't's Answer; Reply Br., *People v. Smith*, No. 1-09-0595, Ex. N to Resp't's Answer.)

Smith himself, however, did make two attempts to bring these claims to the Illinois Appellate Court's attention. First, Smith filed a *pro se* motion to discharge counsel, in which he claimed that appointed counsel had refused to raise the additional claims contained in the original postconviction petition. After that motion was denied, Smith filed a motion to supplement the brief filed by his attorney. Respondent argues that Smith's motions did not satisfy his obligation to fairly present his ineffective assistance claims to the Illinois Appellate Court, or in the alternative, that Smith's ineffective assistance claims are barred because the Illinois Appellate Court denied the claims on adequate and independent state-law grounds. (Resp't's Answer at 16.) The court disagrees.

A similar situation arose in *Kizer v. Uchtman*, 165 F. App'x 465 (7th Cir. 2006) (unpublished). Although the decision is not precedential, the court finds it instructive. In *Kizer*, the petitioner first filed an unsuccessful *pro se* postconviction petition. 165 F.App'x at 466. The petitioner then appealed with the assistance of counsel, but his attorney raised just one issue on appeal, and did not seek review of any of the issues raised in the *pro se* postconviction petition. *Id.* As in this case, the petitioner in *Kizer* was not satisfied; he attempted to preserve all of the issues raised in his original postconviction petition by moving *pro se* to file a supplemental brief. *Id.* The State opposed the motion, arguing that petitioner had already filed a brief through counsel, and had no right to hybrid representation, and the Illinois Appellate Court evidently agreed,

12

summarily denying petitioner's *pro se* motion. *Id.* at 466, 467. On appeal to the Illinois Supreme Court, the same thing happened: counsel presented just one issue and the petitioner again sought leave to file a *pro se* supplement, presenting additional claims and issues. The Illinois Supreme Court summarily denied both the PLA and the petitioner's request to supplement it. *Id.* On federal habeas review, the district court ruled that the petitioner's attempts to file *pro se* supplemental briefs did not constitute completion of a full round of appellate process and as such, the claims were procedurally defaulted. *Id.* at 467.

The Seventh Circuit reversed that ruling. *Id.* at 468-69. In doing so, the court noted that the petitioner's "motions to supplement and accompanying briefs present[ed] the operative facts and controlling federal legal principles governing his claims." *Id.* at 468. The court also pointed out that the filings were made to the appropriate state courts, and the State did not argue that the petitioner's motions were "filed improperly, too late, or otherwise so as to frustrate the efficient administration of the judicial process." *Id.* Further, the *Kizer* court was not convinced that the rule against hybrid representation required the conclusion that petitioner's claims were not properly presented. The court explained that "[w]hile it is not necessarily favored, there is nothing inherently improper about hybrid representation; a court may, in the exercise of its discretion, allow it." *Id.* (citation omitted). The court concluded that petitioner's attempts to file supplemental briefs qualified as fairly presenting his claims because he "raised issues using a method that would allow the court, in its discretion, to consider federal claims of unconstitutionality." *Id.* (collecting cases).

Here, similarly, Smith's motions were timely filed in the appropriate court, and Smith's motions and the accompanying briefs present the operative facts and controlling federal legal principles governing his ineffective assistance claims. Smith's motions do not appear to have been filed "to frustrate the efficient administration of the judicial process," but rather to raise and preserve issues that would otherwise be waived by appointed counsel's refusal to address these issues in the opening brief. *Id.* It is not at all uncommon for a party to discharge counsel and proceed with

13

new counsel or *pro se.*  Nor is this court able to locate authority firmly establishing a bar to filing a supplemental brief on appeal.  Like *Kizer*, Smith raised his claims "using a method that would allow the court, in its discretion, to consider federal claims of unconstitutionality."  *Id.*

### B.     Adequate and Independent State-Law Grounds

Although the *Kizer* court felt that the petitioner in that case had fairly presented his claims, the court noted that it was not asked to address the issue of whether the summary denial of the supplemental briefs meant that the claims contained in those submissions had been decided on adequate and independent state-law grounds.  165 F. App'x at 467 n. 1.  That issue is squarely presented in this case: Respondent argues that even if Smith's attempts to supplement satisfy his obligation to fairly present his ineffective assistance claims to the Illinois Appellate Court, those claims are nevertheless barred because the Illinois Appellate Court denied the claims on adequate and independent state-law grounds.  (Resp't's Answer at 16.)  In order for the state court decision to be independent, the court must have "actually . . . relied on [a] procedural bar as an independent basis for its disposition of the case."  *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)).  "Whether a ground is independent depends on state law . . .; therefore, in order for the state judgment to bar federal habeas review, the last state court to render a judgment in the case must have 'clearly and expressly state[d] that its judgment rests on a state procedural bar.'"  *Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000) (citation omitted) (quoting *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir.1998)).  In addition, "[s]tate court decisions are not adequate to bar federal habeas review unless they rest upon firmly established and regularly followed state practice."  *Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir. 1999) (citing *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)).

The Illinois Appellate Court summarily denied Smith's motion to discharge counsel and his motion to file a supplemental brief without explanation.  (See Order Den. Mot. to Discharge Counsel, *People v. Smith*, No. 1-09-0595, Ex. O to Resp't's Answer, at 29; Order Den. Mot. for

14

Leave to File Supplemental Br., *People v. Smith*, No. 1-09-0595, Ex. O to Resp't's Answer, at 42.) Respondent insists that Illinois's procedural rules bar hybrid representation and the filing of multiple opening briefs, and that this court should infer from the circumstances that these rules formed the basis of the Appellate Court's denials of Smith's motions. (Resp't's Answer at 17.) In this court's view, the circumstances do not require such an inference. Respondent has identified Illinois Supreme Court Rule 341 as the bar to the filing of multiple opening briefs. On its face, Rule 341 sets forth the page limits, organization, and other formatting requirements for briefs filed in the Illinois Appellate Court. *See* Ill. Sup. Ct. Rule 341. The Rule does contemplate that each party will file a single opening brief, but Smith did not do otherwise; neither of the *pro se* motions he filed can be fairly characterized as an attempt to file a second opening brief. Rather, Smith attempted to supplement or amend the opening brief filed by his lawyer. Rule 341 is silent on the possibilities of amending briefs or filing supplemental briefs on appeal. *See* Ill. Sup. Ct. Rule 341; *but cf.* 725 ILCS 5/122-1(f) ("Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure.").

Respondent also cites to *Dolis v. Gilson*, No. 07 C 1816, 2009 WL 5166228 (N.D. Ill. Dec. 23, 2009). In that case, where the Illinois Appellate Court and Illinois Supreme Court had refused to consider a defendant's *pro se* briefs filed in addition to the briefs filed by counsel, a judge of this court observed that Illinois has a clearly established state procedural rule preventing parties from filing more than one brief or PLA. *Id.* at *8. *Dolis*, an unreported and nonprecedential decision, contains little detail regarding the filing of the briefs other than the fact that briefs were tendered to, but not filed or otherwise accepted by, either the Illinois Appellate Court or the Illinois Supreme Court. *Id.* at *4. Unlike the briefs at issue in *Dolis*, the motions and briefs filed by Smith in this case were properly filed, were accepted by the court, and were summarily denied. Although the *Dolis*

court invoked an Illinois rule preventing parties from filing more than one brief or PLA, the *Dolis* court referred only to Rule 341, which, as discussed above, is silent on amending briefs or filing supplemental briefs on appeal.

Respondent also relies on *People v. McNeal*, 194 Ill.2d 135, 174, 742 N.E.2d 269, 275 (Ill. 2000), where the defendant had been permitted to file a *pro se* brief raising issues neglected in the brief filed by his counsel. In that case, the State similarly objected, and the Illinois Supreme Court observed that "a defendant is not entitled both to be represented by counsel and to proceed as a *pro se* litigant." *Id.* That case nevertheless supports a conclusion favorable to the Petitioner on this issue, as the court neither sustained the State's objection nor ordered the *pro se* filing stricken. *Id.* Rather, the court went on to consider the issues raised in the *pro se* brief. *Id.*

This court need not determine whether forbidding hybrid representation is a firmly established and regularly followed state practice. In the present case, Smith did not seek to be represented by counsel and to simultaneously proceed as a *pro se* litigant. Although Smith's second motion to supplement the brief filed by his appointed counsel might be characterized as an effort at hybrid representation, his first motion—to discharge counsel and supplement the brief—is not. In his first motion, Smith sought to discharge an attorney who he claimed refused to raise the issues contained in his postconviction petition. (*See* Mot. to Discharge Counsel, *People v. Smith*, No. 02-CR-13497, Ex. O to Resp't's Answer at 5.) Smith asked the court to appoint new counsel, who would presumably raise additional issues at Smith's request. In the alternative, Smith sought to proceed *pro se* to supplement the brief filed by counsel by adding claims. (*Id.*) Thus, Smith was not attempting to both be represented by counsel and to proceed as a *pro se* litigant.

"[I]n order for the state judgment to bar federal habeas review, the last state court to render a judgment in the case must have 'clearly and expressly state[d] that its judgment rests on a state procedural bar.'" *Thomas v. McCaughtry*, 201 F.3d at 1000 (quoting *Jenkins v. Nelson*, 157 F.3d at 491). The Illinois Appellate Court's summary denials make it impossible to determine whether

the appellate court actually relied on a procedural bar, "'as an independent basis for its disposition of the case.'" *Harris v. Reed*, 489 U.S. at 261-62 (quoting *Caldwell v. Mississippi*, 472 U.S. at 327). Further, this court is unwilling to conclude that Smith's attempt to discharge counsel and supplement the brief violated a "firmly established and regularly followed state practice." *Franklin*, 188 F.3d at 882 (citing *James v. Kentucky*, 466 U.S. at 348-51). The court concludes that Smiith fairly presented his ineffective assistance of counsel claims to the Illinois Appellate Court.[4]

### C. Postconviction PLA

Although Smith thus adequately presented the claims that are the basis of his habeas petition to the Illinois Appellate Court when appealing the decision on his first postconviction petition, he did not raise these claims before the Illinois Supreme Court. The *pro se* PLA Smith filed in connection with his first postconviction petition raised four grounds for relief:

(1) appellate counsel appointed to represent petitioner on postconviction appeal failed to raise the claims contained in the postconviction petition;

(2) Smith was illegally detained and interrogated in violation of *Miranda*;

(3) counsel on direct appeal was ineffective for failing to argue that Smith's trial counsel was ineffective for failing to call Crowder at petitioner's suppression hearing; and

(4) trial counsel was ineffective for failing to call Crowder as a witness at trial.

---

[4] Smith also attempted to raise his ineffective assistance arguments in a successive postconviction petition filed shortly after his first postconviction petition was denied. (*See* Successive Postconviction Pet., *People v. Smith*, No. 02 CR 13497.) Under Illinois law, prisoners are generally limited to the filing of one postconviction petition. 725 ILCS 5/122-1(f). This rule may be relaxed, however, when the "petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceeding and prejudice from the results of that failure." 725 ILCS 5/122-1(f); see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 793 N.E.2d 609 (Ill. 2002). The trial court ruled that some of the claims Smith raised in his successive petition had been raised in his original petition, and thus, were barred by *res judicata*. (Order Denying Leave to File Successive Pet., *People v. Smith*, No. 02 CR 13497 (Ill. Cir. Ct. June 15, 2010), Ex. T to Resp't's Answer, at C65.) The trial court ruled further that Smith could demonstrate neither cause nor prejudice regarding the new claims he raised in the successive petition. (*Id.* at C65-C66.) This ruling rests on adequate and independent state-law grounds. *See Woods v. Schwartz*, 589 F.3d 368, 376 (7th Cir. 2009).

17

(*See* PLA at 3-4.) As discussed above, the amended habeas petition in this court raises two ineffective assistance of counsel claims directed at counsel on direct appeal:

(1) counsel on direct appeal failed to raise the claim that the trial court had erred in denying and/or failing to reconsider its ruling on a motion to quash Smith's arrest and suppress his confession; and

(2) counsel on direct appeal failed to argue that Smith was arrested without probable cause because the detectives improperly relied on Crowder's statement.

(*See* Am. Habeas Pet. at 5-6.) Although related, these claims are distinct from the claims raised in the PLA. Smith "must present the same 'factual and legal bases' to the federal court that he presented to the state court." *Ward v. Jenkins*, 613 F.3d at 697 (citation omitted). The claims presented in Smith's habeas petition and Claims 2 and 3 from Smith's postconviction PLA certainly involve the same operative facts concerning Smith's arrest, detention, and suppression hearing. Smith's habeas petition, however, does not challenge his arrest and detention, or his trial counsel's effectiveness with respect to the suppression hearing. Both claims in Smith's habeas petition concern the effectiveness of his counsel on direct appeal. "[A]n assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). The claims that Smith raised in his habeas petition concerning the effectiveness of his counsel on direct appeal were not separately presented to the Illinois Supreme Court. Because Smith's ineffective assistance claims were not fully and fairly presented through one complete round of state court review, they are now procedurally defaulted.

"Where, as here, a petitioner has procedurally defaulted a claim, he may obtain federal habeas relief only if he can show either cause and prejudice for the default (*i.e.*, some external obstacle prevented petitioner from presenting his claim to the state courts) or that a failure to grant him relief would result in a fundamental miscarriage of justice (*i.e.*, a claim that the constitutional deprivation probably has resulted in a conviction of one who is actually innocent)." *Gonzales v.*

*Mize*, 565 F.3d 373, 381 (7th Cir. 2009) (citation omitted). Smith has not made either of these arguments and the court sees no basis for them in the record. The court concludes that claims Smith presents in his habeas petition have been procedurally defaulted.

In light of its conclusion, the court will not address the merits of Smith's claims that the attorney who represented him on direct appeal was ineffective. The court notes, however, that Smith's counsel on direct appeal did indeed challenge the trial court's ruling on the motion to quash Smith's arrest and suppress his confession. The brief filed by counsel directly argued that Smith had been arrested and detained without probable cause. (*See* Pet'r's Br. on Direct Appeal.) As the court reads the record, counsel on direct appeal did raise the very arguments Smith now faults him for neglecting. On this record, any ineffective assistance claim would appear to have little merit. But procedural default requires that this petition be denied.

## **CONCLUSION**

For the reasons stated above, the court denies Smith's petition for a writ of habeas corpus. The court declines to issue Petitioner a certificate of appealability, because he has failed to make "'a substantial showing of the denial of a constitutional right.'" *Gonzalez v. Thayer*, ___ U.S. ___, 132 S. Ct. 641, 648 (Jan. 10, 2012) (quoting 28 U.S.C. § 2253(c)(2)); see also *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011) (noting the Supreme Court's statement that the required "substantial showing" exists only where "reasonable jurists" could debate the disposition of the petition) (citing *Slack v. McDaniel*, 529 U.S. 476, 484 (2000)).

ENTER:

Dated: April 11, 2013

_____
REBECCA R. PALLMEYER
United States District Judge